IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> GGNSC CHARLOTTE RENAISSANCE, LLC d/b/a GOLDEN LIVINGCENTER-DARTMOUTH, <br><br> Defendant. | CIVIL ACTION NO. : 3:12 CV 176 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Sandra Bagwell ("Bagwell") who was adversely affected by such practices. Specifically, the Equal Employment Opportunity Commission (the "Commission") alleges that GGNSC Charlotte Renaissance, LLC d/b/a Golden LivingCenter-Dartmouth ("Defendant") discharged Bagwell because of her actual disability, failed to provide Bagwell with a reasonable accommodation, and discharged Bagwell because it regarded her as disabled, all in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of

the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina, Charlotte Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a Delaware corporation doing business in the State of North Carolina and the City of Charlotte, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Bagwell filed a charge with the Commission alleging violations of Title I of the ADA by Defendant. All

conditions precedent to the institution of this lawsuit have been fulfilled.

8. Bagwell was hired by Defendant on or about April 5, 2007, to work as a Licensed Practical Nurse ("LPN") at a nursing home operated by Defendant in Charlotte, North Carolina. The nursing home provides care to persons who are mentally disabled, physically disabled, ill, and/or elderly. Prior to working for Defendant, Bagwell had 35 years of experience as a LPN. During her employment with Defendant, Bagwell received a performance evaluation dated September 4, 2008, wherein her supervisor noted that Bagwell "met all performance expectations" and "managed the 11-7 shift well." This was the only performance evaluation Bagwell received while working for Defendant. Bagwell was never informed that she had any performance deficiencies.

### A. Discharge based on actual disability.

9. On or about April 28, 2009, Defendant engaged in an unlawful employment practice at its facility in Charlotte, North Carolina, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), when it discharged Bagwell because of her disability.

10. Bagwell has an actual disability as defined by the ADA.

11. In or around the early 1990's, Bagwell was diagnosed with major depressive disorder ("MDD"), an episodic condition, which when the symptoms are active, substantially limits Bagwell's brain function. At all relevant times, Bagwell was a qualified individual with a disability within the meaning of the ADA and could perform the essential functions of her job as a LPN at Defendant's facility with or without an accommodation. Prior to April 25, 2009, Bagwell informed Defendant of her disability.

12. On or about April 11, 2009, Bagwell suffered a major depressive episode and attempted to commit suicide. Thereafter, because Bagwell continued having suicidal ideation,

on or about April 25, 2009 Bagwell was taken to the Carolinas Medical Center-Pineville emergency room and was subsequently admitted to the Behavioral Health Center/Carolinas Medical Center-Randolph ("BHC/CMC") for psychiatric evaluation and treatment.

13. Bagwell was scheduled to report to work at or around 3:00 p.m. on Saturday, April 25, 2009, the same day she was admitted to BHC/CMC. On that day, Bagwell's husband ("Mr. Bagwell") called Bagwell's supervisor, Defendant's Director of Nursing ("Nursing Director"), concerning Bagwell's hospitalization. Mr. Bagwell informed the Nursing Director that Bagwell was in the hospital, that Bagwell would not be able to report to work and that Bagwell needed a leave of absence. Bagwell had previously informed the Nursing Director that she suffers from MDD.

14. On or about Monday, April 27, 2009, Mr. Bagwell spoke with Defendant's Executive Director ("Executive Director") concerning Bagwell's need for a medical leave of absence. Mr. Bagwell informed the Executive Director that Bagwell was admitted to BHC/CMC on April 25, 2009 and was under a physician's care. Mr. Bagwell requested the proper paperwork so that Bagwell could take a leave of absence for her disability until she could return to work. Defendant's Executive Director informed Mr. Bagwell that he would leave the appropriate paperwork at Defendant's facility for Mr. Bagwell to retrieve. Later the same day when Mr. Bagwell arrived at Defendant's facility, Mr. Bagwell was provided with a "vacation request form" instead of the proper leave of absence request form ("LOA Request Form"). Lacking knowledge that he had the improper form, Mr. Bagwell took the form with him when he left the facility and provided it to Bagwell. Bagwell informed Mr. Bagwell that the form was an incorrect form and that she needed Defendant's LOA Request Form.

15 The next day, on or about April 28, 2009, Mr. Bagwell called the Executive

Director to request the LOA Request Form, but instead spoke with Defendant's Human Resources representative. During that phone call, Mr. Bagwell requested that Defendant provide him with the proper leave of absence form so that Bagwell could take a medical leave of absence. Defendant's Human Resources representative faxed the LOA Request Form to Mr. Bagwell. Bagwell filled out the LOA Request Form indicating among other things, that she did not know when she would return to work and Mr. Bagwell faxed the completed LOA Request Form back to the attention of the Executive Director at 4:00 p.m. on April 28, 2009. The completed LOA Request Form stated that Bagwell was requesting "non-FML" medical leave effective April 25, 2009 and specified that Bagwell had 97.7 hours of accrued sick leave and 45 hours of accrued vacation leave available.

16. On or about April 28, 2009, Defendant terminated Bagwell because of her disability. Specifically, on or about May 6, 2009, Bagwell received a letter dated May 3, 2009 from Defendant's Executive Director stating that Bagwell was terminated effective April 28, 2009 because she had exhausted all leave available under Defendant's leave policies, and was unable to return to her job within the applicable time limits. At the time that Bagwell requested a leave of absence, Bagwell had approximately 97.7 hours of accrued sick leave and 45 hours of accrued vacation leave available.

17. At the time that Defendant discharged Bagwell, Bagwell was not on Defendant's schedule to return to work until around May 8, 2009 as Defendant had already approved Bagwell to use some of her accrued vacation leave – from around May 4 until around May 7, 2009 – prior to Bagwell entering BHC/CMC for psychiatric treatment. Ultimately, Bagwell was discharged from BHC/CMC on May 1, 2009 and could have returned to work on or after May 2, 2009. Defendant's decision to terminate Bagwell after receiving her request for medical leave on April

28, 2009 was a direct result of Bagwell's disability.

B. <u>Failure to accommodate.</u>

18. Plaintiff hereby incorporates the factual allegations contained in paragraphs 8 through 17 above.

19. Beginning on or about April 25, 2009, Defendant engaged in an unlawful employment practice at its facility in Charlotte, North Carolina, in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A), when it failed to provide Bagwell a reasonable accommodation for her disability. Specifically, Defendant failed and refused to allow Bagwell to either use some or all of her accrued leave to cover her absence from work related to her disability or to take a leave of absence for her disability, or both.

C. <u>Discharge based on perceived disability.</u>

20. Plaintiff hereby incorporates the factual allegations contained in paragraphs 8, and 11 through 17 above. On or about April 28, 2009, Defendant engaged in an unlawful employment practice at its facility in Charlotte, North Carolina, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a), when discharged Bagwell because it regarded her as disabled.

21. Bagwell has a mental impairment, MDD. Defendant was aware of Bagwell's impairment at the time it discharged her. As more fully described in paragraphs 11 through 17 above, Defendant discharged Bagwell because of her impairment.

22. The effect of the practices complained of in paragraphs 8 through 21 above have been to deprive Bagwell of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

23. The unlawful employment practices complained of in paragraphs 8 through 21 above were intentional.

24. The unlawful employment practices complained of in paragraphs 8 through 21 above were done with malice or with reckless indifference to the federally protected rights of Bagwell.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in disability discrimination against employees and from engaging in any other employment practices that discriminate on the basis of disability.

B. Order Defendant to make Bagwell whole by providing appropriate back pay with prejudgment interest and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, in amounts to be determined at trial.

C. Order Defendant to make Bagwell whole by providing compensation for past and future pecuniary loses resulting from the unlawful employment practices described above in amounts to be determined at trial.

D. Order Defendant to make Bagwell whole by providing compensation for past and future non-pecuniary loses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay Bagwell punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this the 19th day of March, 2012.

>Respectfully submitted,
>
>P. DAVID LOPEZ
>General Counsel
>
>JAMES L. LEE
>Deputy General Counsel
>
>GWENDOLYN YOUNG REEMS
>Associate General Counsel
>Equal Employment Opportunity Commission
>131 M Street, N.E.
>Washington, D.C. 20507
>
>s/ Lynette A. Barnes
>LYNETTE A. BARNES (NC Bar No. 19732)
>Regional Attorney
>
>KARA GIBBON HADEN (NC Bar No. 26192)
>Supervisory Trial Attorney
>
>s/ Stephanie M. Jones
>STEPHANIE M. JONES (GA Bar No. 403598)
>Trial Attorney
>Email: stephanie.jones@eeoc.gov
>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
>Charlotte District Office
>129 West Trade Street, Suite 400
>Charlotte, North Carolina 28202
>Telephone: 704.954.6471
>Facsimile: 704.954.6412